UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ROBERT ALFANO, | ) |
| | ) |
|    Movant, | ) |
| | ) |
| v. | ) Civil No. 8-252-B-W |
| | ) Crim. No. 5-91-B-W |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|    Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. 2255 MOTION (Docket No. 1), ORDER ON EMERGENCY MOTION TO STAY EXECUTION OF SENTENCE (Docket No. 9) AND RENEWED MOTION FOR APPOINTMENT OF COUNSEL (Docket No. 7)**

Robert Alfano is currently incarcerated at a federal correctional facility after having been sentenced by this Court to twenty-four months on one bank fraud count. Alfano has filed an 18 U.S.C. § 2255 motion raising a single ground: "U.S.S.G. § 2B1.1(b)(10)(C)(i) was erroneously applied and trial counsel was ineffective in not objecting." That sentencing guideline applies when the offense involves "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." U.S.S.G. § 2B1.1(b)(10)(C)(i). The United States has filed a responsive motion.[1]

On September 30, 2008, Alfano filed an emergency motion to stay execution of his sentence and a motion for appointment of counsel. In his emergency motion to stay Alfano represents that his state sentence expired on April 16, 2008, and he has been serving his federal

---

[1] Per the Court's docket, Alfano has until October 27, 2008, to file his reply. However, in view of the pending motion for an emergency stay and the reality that the merits of the underlying 28 U.S.C. § 2255 ground are so entwined with the prospects of Alfano's motion to stay, I have concluded that the most efficient way for Alfano to obtain review of his claim that he is entitled to release is to issue this recommended decision on the merits of his § 2255 ground and an order on his two pending motions, giving him an opportunity to respond as he see fits. While expediting the Court's review of his § 2255 motion, this approach does not short-circuit Alfano in any meaningful way because he has already had his opportunity to set forth the substance of his claim to relief and his reply to the United States' arguments would be limited to the contents of that response which does not attempt to address the true merits of Alfano's ineffective assistance claim.

sentence ever since.  The Federal Bureau of Prisons inmate locator indicates a projected release date of January 8, 2010.  Alfano believes that if his federal sentencing range had been correctly computed without the § 2B1.1(b)(10)(C)(i) enhancement he would have been eligible for a Zone C split sentence as low as four and one half months.

In his direct appeal the First Circuit addressed Alfano's § 2B1.1(b)(10)(C)(i) challenge and, as relevant to Alfano's current claim, it reasoned as follows:

> This sentencing appeal raises a single issue-whether the district court plainly erred in concluding that, in committing bank fraud, defendant "used a[ ] means of identification unlawfully to produce or obtain any other means of identification" within the meaning of USSG § 2B1.1(b)(10)(C)(i), and therefore increasing his offense level and resulting guidelines sentencing range. As defendant acknowledges, because he did not raise this issue below, our review is for plain error only. Finding none, we affirm.
> Defendant makes a three-pronged attack on the enhancement. Only the first prong is developed in any depth in defendant's opening brief. Assuming that the second two prongs nevertheless warrant appellate review, but see United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (holding that undeveloped arguments are waived), they do not rise to the level of plain error.
> Defendant's first argument is that he used the name of a fictitious person to cash one of the counterfeit checks that was the subject of the indictment.  It is true that the phrase "means of identification" as used in section 2B1.1(b)(10)(C)(i) includes only means of identification of "an actual ( *i.e.,* not fictitious) individual." USSG § 2B1.1., comment. (n.9(A)). However, the means used here included not only the fictitious name of one of the payees, but also the account number of Toys R Us and the payor name of Atlantic Coast Contractors, both actual entities. The fact that the name of a fictitious person was also used on one of the checks is immaterial since the applicable definition of "means of identification" includes "any name or number that may be used, *alone or in conjunction with any other information.*" 18 U.S.C. § 1028(d)(7) (emphasis added). Similarly, the fact that defendant also used a fake driver's license purporting to identify him as Steven Chapman, is equally immaterial. In fact, at the change of plea hearing, the prosecution expressly disavowed any reliance on defendant's production or use of that license.

United States v. Alfano, No. 07-1624, 2008 WL 867387, 1 (1st Cir. 2008) (unpublished opinion) (footnotes omitted).  "In his reply brief," the First Circuit also observed, "defendant argues, for the first time, that those entities were not "individuals" within the meaning of application note

2

9(A) or 18 U.S.C. § 1028(d)(7). We therefore do not consider that question here. See United States v. Eirby, 515 F.3d 31, 37 n. 4 (1st Cir.2008) (deeming arguments raised for the first time in appellant's reply brief to be waived)." Id. at 1 n.5.

However, subsequent to that unpublished decision, Alfano moved for rehearing or rehearing en banc and the First Circuit entered the following order:

> In this sentencing appeal, a panel of this court previously affirmed the district court's judgment. See United States v. Alfano, 2008 WL 867387 (1st Cir. Apr. 2, 2008) (per curiam) (unpublished). Appellant has now filed a timely petition for rehearing or rehearing en banc. At our request pursuant to Fed. R. App. P. 40(a)(3), the government filed a response to the petition, and defendant filed a reply with a motion for leave to do so, which we allow.
> The petition presses an argument that the panel deemed waived--because it was raised for the first time in appellant's reply brief--and therefore did not consider on its merits. Id. at *1 n.5. In his petition, appellant contends that, in making this argument in his reply brief, he was merely responding to an argument made in the appellee's brief, and so the court should not have deemed the argument waived for appellant's failure to raise it sooner. The short answer to that contention is that even if that argument was not waived, any challenge to the enhancement in question was forfeited because it was not raised below and therefore is reviewable, at most, only for plain error (as appellant conceded in his opening brief). Id. at *1. And, under that rigorous standard, the argument fails in any event.
> Accordingly, the motion for leave to file a reply to the petition is granted, the petition for panel rehearing is granted, and the panel's decision is amended by deleting the existing text of footnote 5 and substituting the following:
>> In his reply brief, defendant argues, for the first time, that those entities were not "individuals" within the meaning of application note 9(A) or 18 U.S.C. § 1028(d)(7). Assuming that this new argument was merely forfeited, rather than waived for failure to raise it sooner, it does not survive plain-error scrutiny. What constitutes an "individual" for that purpose has never been decided in this circuit, neither party cites a case squarely on point in any other circuit, and we have been unable to find one. Therefore, like the other arguments discussed in the text, this fails plain-error scrutiny as well.

(May 27, 2008, Order.) Alfano moved again for rehearing and that request was denied. (July 8, 2008, Order.)

3

In his 28 U.S.C. § 2255 memorandum Alfano makes the following argument. He states that the original basis for his § 2B1.1(b)(10)(C)(i) enhancement was in error because Application Note 9 makes it clear that the means of identification must be of an actual, and not a fictitious, person. (Sec. 2255 Mem. at 10-13.) He explains that all parties in the criminal proceedings were operating under the assumption that Alfano's use of the Steven Chapman identification was sufficient to qualify for the enhancement but, seeing the errors of its ways, the Government had abandoned that theory in the direct appeal, instead defending the enhancement on the grounds that the two business entities were named on the checks. (Id. at 13.) Alfano argues that this is a flawed theory because the entities are not human beings and, thus, not "individuals" within the embrace of the statute. (Id. at 13-16.)[2]

---

[2] Accordingly, Alfano is not seeking 28 U.S.C. § 2255 relief dependent on the other two challenges addressed by the First Circuit. The remaining substance of the First Circuit's opinion is as follows:

> Defendant's second argument focuses on the requirement that the means of identification used must be of persons "other than the defendant" himself. USSG § 2B1.1, comment. (n.9(A)). As already indicated, the means of identification used here were of two entities-Toys R Us and Atlantic Coast Contractors-other than the defendant himself. So that argument clearly fails.
>
> Defendant's third argument-if preserved and further developed-might have presented a closer question. That argument-in enhanced form-appears to be that section 2B1.1(b)(10)(C)(i) requires that two means of identification be used, one to create the other, and that, here, the second means is absent. In other words, even if defendant used "means of identification" to produce the counterfeit checks, those checks were not "another means of identification," like a credit card, a driver's license, or a bank loan, the examples used in the background note to section 2B1.1.
>
> What constitutes "another means of identification" for this purpose is far from clear under the guidelines themselves or existing caselaw. This court has never considered the question. In a case factually similar to this one, one circuit concluded that the enhancement applied to using other names and account numbers to produce counterfeit checks. [United States v. ]Scott, 448 F.3d [1040,]1045 [(8th Cir. 2006)]. Other jurists have reached differing conclusions while agreeing that the "convoluted language" of the guideline and commentary is difficult to parse. See United States v. Melendrez, 389 F.3d 829, 831-37 (9th Cir.2004); id. (dissenting opinion) at 837-40; see also United States v. Newsome, 439 F.3d 181, 187 n. 7 (3d Cir.2006) (declining to follow Melendrez). Given that state of the law, we cannot say that any error in applying that enhancement here was sufficiently "plain" to warrant correction in the absence of preservation. United States v. Goodhue, 486 F.3d 52, 58 (1st Cir.2007). As we have previously explained, "[t]he plain error doctrine is premised on the assumption that parties must take responsibility for protecting their legal rights and, accordingly, that only the clearest and most serious of forfeited errors should be corrected on appellate review." United States v. Padilla, 415 F.3d 211, 223-24 (1st Cir.2005) (en banc). The errors alleged here are not of that clarity or caliber.

Alfano, 2008 WL 867387,* 1 (footnote omitted).

In <u>United States v. De La Cruz</u> the First Circuit summarized the standard for analyzing ineffective assistance claims stemming from a federal prosecution:

> "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374 (1986). In order to prevail, a defendant must show both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984). In other words, a defendant must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting therefrom. …
> Although the Supreme Court in <u>Strickland</u> discussed the performance prong of an ineffectiveness claim before the prejudice prong, the Court made clear that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> at 697. As the Court noted: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Id.</u>
> ….
> We are mindful that, in evaluating the prejudice suffered by a defendant as a result of his counsel's alleged deficient performance, we must consider the "totality of the evidence before the judge or jury." <u>Id.</u> A verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." <u>Id.</u> at 696; <u>see</u> <u>also</u> <u>Buehl v. Vaughn</u>, 166 F.3d 163, 172 (3d Cir.1999) (noting that "[i]t is firmly established that a court must consider the strength of the evidence in deciding whether the Strickland prejudice prong has been satisfied"); <u>Reed v. Norris</u>, 195 F.3d 1004, 1006 (8th Cir.1999) (finding it impossible for the defendant to establish prejudice where the evidence of his guilt was overwhelming); <u>Bieghler v. McBride</u>, 389 F.3d 701, 707 (7th Cir.2004) (finding no prejudice where overwhelming evidence pointed to the defendant's guilt).

514 F.3d 121, 140-41 (1st Cir. 2008).

With regards to the motion to stay, assuming that this court has the authority to implement a stay, <u>see</u> <u>United States v. Prows</u>, 448 F.3d 1223, 1226-27 (10th Cir. 2006), the question of whether or not to grant such relief would turn on, at least in part, the likelihood of

Alfano's success on the merits, see United States v. Claiborne, 790 F.2d 1355, 1356 (9th Cir. 1986); Sinito v. United States, 750 F.2d 512, 516 (6th Cir. 1984).

Apropos the performance prong of Strickland, the United States argues that counsel could have made a tactical decision in not pressing this argument: "Arguably, competent counsel could conclude that his client's interests were better served by avoiding a challenge that might or might not succeed and arguing instead for leniency for the client." (Gov't Mem. at 2.) It also represents:

> In an effort to understand trial counsel's reason for failing to challenge the adjustment in Alfano's case, on September 24 and 25, 2008 Government counsel exchanged telephone calls with [defense counsel]. [Defense counsel] took the position that the attorney-client privilege prevented him from answering Government counsel's questions about his handling of Alfano's sentencing.

(Id. at 3.) Arguing that the precedent is clear that a 28 U.S.C. § 2255 movant waives the attorney/client privilege when he or she raises a Sixth Amendment claim of this ilk, the United States concludes its memorandum as follows: "Although the Government can speculate about what professional reasons or judgment might have prompted [defense counsel] not to challenge the enhancement that was applied to Alfano, absent information from [defense counsel], the Government cannot adequately respond to Alfano's Sixth Amendment claim." (Id. at 4.)

With respect to Alfano's likelihood of success on the prejudice prong of Strickland, "when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's [criminal proceedings], the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

Since the First Circuit reformulated Footnote 5, there has not been any addition to the federal case law on the question of whether the guideline applies to a purely business entity. It

seems that Alfano is right that the closest case on point prior to the First Circuit decision is United States v. Oates in which the Eighth Circuit reasoned:

> Oates … contends the "means of identification" enhancement does not apply to him because the credit card account number he obtained was in the name of a fictitious business. He concedes he used one "means of identification" (the victim's social security number) unlawfully to obtain another "means of identification" (the credit card account number), but claims the credit card account number was not a means of identifying "an actual (i.e., not fictitious) individual, other than the defendant or a person for whose conduct the defendant is accountable under § 1B1.3 (Relevant Conduct)," U.S.S.G. § 2B1.1 cmt. n.8(A), and therefore should not trigger the two-level enhancement. We disagree.
> Although the credit card account number was issued in the name of a fictitious business, it was still a means of identifying an actual individual. It is undisputed Oates's fraudulent activity was reflected on the victim's credit report, and the victim had to take steps to protect his identity from being linked to the fictitious business's credit card account number. The "nature of the harm" meant to be targeted by this enhancement is, in part, "that which results from using someone's identifying information to establish new credit." United States v. Williams, 355 F.3d 893, 900 (6th Cir.2003). When an actual individual's social security number is paired with a fictitious name on a subsequently obtained means of identification, it does not necessarily "sever the ties linking the victims and the Social Security numbers." United States v. Melendrez, 389 F.3d 829, 836 (9th Cir. 2004). In this case, Oates's use of a fictitious business name on the credit account did not sever the ties linking the account to the victim. The account still directly affected the victim's individual credit, and thus was a means of identifying an actual individual. Under these circumstances, the district court correctly included the enhancement in its Guideline calculations.

427 F.3d 1086, 1089 -90 (8th Cir. 2005). Oates is not very resounding support to the United States' position. The other precedents apparently relied on by the United States in its brief to the First Circuit are really inapposite. See United States v. Hawes, 523 F.3d 245 (3d Cir. 2008) ("Hawes contends that "the act of changing a person's address is not engaging in the 'unauthorized transfer or use of any means of identification unlawfully to alter or duplicate or assemble [an] alternate hybrid means of identification' or using a means of identification to 'produce an altered duplicate means of identification.'"); United States v. Hines, 449 F.3d 808 (7th Cir. 2006)(government did not meet its burden of proving "Huthiafa Abdul-Hakeem" was an

7

actual person); United States v. Scott, 448 F.3d 1040 (8th Cir. 2006) (rejecting an argument that obtaining an individual's bank account number was not obtaining a "means of identification" within the guideline).

The shifting theories of the United States concerning the applicability of the § 2B1.1(b)(10)(C)(i) and the First Circuit's willingness to accept the alternate theory under a plain-error standard leaves Alfano's 28 U.S.C. § 2255 ineffective assistance claim in an awkward posture. Had counsel argued against the applicability of the enhancement on the theory that Steven Chapman was a fictitious individual, there is little doubt that he would have met with success. At that juncture, while the ball was still in the hands of defense counsel and the Sentencing Court, the Government could have defended the enhancement on this theory that the two business entities were individuals within the purview of the guideline.

It seems to me that it is a purely legal determination for the Court as to whether or not it would have applied the enhancement on the alternate theory advanced by the United States had the issue been joined by defense counsel. Given this blank slate it is for the sentencing court to determine how it would have decided the question and the impact it would have had on Alfano's ultimate sentence. If prejudice adhered, then further proceedings as to whether or not trial counsel had a tactical reason for proceeding as he did may then be in order.[3]

---

[3] On this score it is hard to imagine that defense counsel would have been concerned that arguing that the guideline was inapplicable because of the express directive of the application guideline would have endangered Alfano's prospects for acceptance of responsibility. While the Government says it can speculate about what professional or strategic reasons counsel had for ignoring this application guideline, I confess that my imaginative powers are not as keen. However, if the Court is not satisfied with deciding this case on the legal issue, before granting a resentencing it would be prudent to appoint counsel and conduct an evidentiary hearing on the issue of performance in order to determine if indeed counsel's actions were somehow professionally sound.

**Conclusion**

Based upon the foregoing, I now deny the pending motion to appoint counsel (Docket No. 7) and motion for an emergency stay of execution of sentence (Docket No. 9) which were specifically referred to me for ruling.  I also recommend that the Court deny the pending motion to vacate because the First Circuit has concluded that the Court's failure to adhere to Application Note 9 was not plain error, given there was an alternative basis for imposing the enhancement.  Thus, Alfano was only prejudiced by counsel's "misstep" (if indeed his performance fell below the acceptable level) if this Court determines in its own mind it would have imposed a different sentence had it been apprised of the content of Application Note 9.  If the Court rejects this recommendation, then I recommend counsel be appointed and the Court make an independent determination of the performance prong of Strickland in fairness to the Government prior to making a final decision as to whether to grant sentencing relief.  In the interest of fairness to Alfano I am making this recommendation prior to Alfano's reply deadline in order to more fully expedite the proceedings and because the Government's response to the Strickland claim leaves little room for Alfano to mount an effective reply.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed without ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 7, 2008